**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KAILEIGH RACHWAL, AMBER STUART, SAMANTHA DE OLIVERIA, and KRISTINA TORRES, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BYHEART, INC.,<br><br>Defendant. | Civil Action No:<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiffs Kaileigh Rachwal, Amber Stuart, Samantha De Oliveria, and Kristina Torres ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this class action against ByHeart, Inc. ("Defendant") based upon information and belief based on investigation of counsel, except for those allegations pertaining to Plaintiffs which are based on their personal knowledge and their own acts and observations.

## NATURE OF THE ACTION

1. Defendant ByHeart, Inc. is a next-generation baby nutrition company, that produces, manufactures, markets, sells, and/or distributes ByHeart Whole Nutrition Infant Formula cans and Anywhere Packs (the "Products") nationwide.

2. The front labels of the Products prominently state that the Products contain "**Certified Clean Ingredients**" and that the Products are "**THOUGHTFULLY CRAFTED WITH: NO** GMO **NO** SOY **NO** CORN SYRUP OR MALTODEXTRIN **NO** PALM OIL **NO** GLUTEN **NO** ARTIFICIAL GROWTH HORMONES **NO** HEXANE-EXTRACTED DHA. **NO, THANK YOU.**":







3. The front labels of the Products also represent that they have received a Clean Label Project Purity Award, which means that the Products are tested for 400 contaminants:




4. The back labels of Defendant's Whole Nutrition Infant Formula cans contain Defendant's "FARM TO FORMULA QUALITY PROMISE:"




5. Based on these representations, consumers reasonably believe that the Products they are purchasing are comprised of only clean ingredients, are tested for any contamination, and do not contain, and are not at risk of containing, any contaminants, such as *C. botulinum*.

6. However, Defendant "was notified by the [United States Food and Drug Administration ("FDA")] on November 7, 2025, of an estimated 83 cases of infant botulism that were reported nationwide since August 2025. Of these, the FDA also noted that 13 infants received ByHeart formula at some point." [1]

7. On November 8, 2025, the FDA announced that Defendant had agreed to "voluntarily recall two batches of ByHeart Whole Nutrition Infant Formula following notification from the [FDA] of a broader ongoing investigation into a recent outbreak of infant botulism."

8. As the FDA explained, "[i]nfant botulism is a rare but potentially fatal illness that presents a serious threat to the health of infants which occurs when *Clostridium botulinum* spores are ingested and colonize the intestinal tract, producing botulinum neurotoxins in the immature gut of infants. Affected infants can present with some or all of the following signs and symptoms:

[1] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/response-broader-fda-investigation-byheart-initiates-voluntary-recall-two-batches-infant-formula (last visited November 21, 2025).

constipation, poor feeding, ptosis (drooping eyelid), sluggish pupils, low muscle tone, difficulty sucking and swallowing, weak or altered cry, generalized weakness, respiratory difficulty, and possibly respiratory arrest."[2]

9. On November 11, 2025, it was announced that Defendant had upgraded its "voluntary recall [to] include[] all batches of ByHeart Whole Nutrition Infant Formula cans and Anywhere Pack[s]"[3] because they are potentially "contaminated with *Clostridium botulinum*, which is causing infant illness in multiple regions of the country."[4] Per the FDA, "[f]ifteen infant botulism cases have been identified that were fed ByHeart Whole Nutrition powdered infant formula before getting sick."

10. On November 20, 2025, the FDA explained that "[a]s part of the investigation, ByHeart tested unopened infant formula products retained at its facility. According to ByHeart, third party laboratory analysis of some of these samples identified *Clostridium botulinum*, which produces the toxin that is making infants sick in this outbreak."[5]

11. As of November 26, 2025, a total of 37 infants with suspected or confirmed infant botulism and confirmed exposure to ByHeart Whole Nutrition infant formula have been reported from 17 states.[6]

12. Accordingly, Plaintiffs bring this action on behalf of themselves and all others similarly situated to recover damages for Defendant's false, deceptive, and/or misleading conduct.

---

[2] *Id.*
[3] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/byheart-updates-information-regarding-voluntary-recall-all-batches-byheart-whole-nutrition-infant (last visited November 21, 2025).
[4] https://www.fda.gov/food/outbreaks-foodborne-illness/outbreak-investigation-infant-botulism-infant-formula-november-2025 (last visited December 2, 2025).
[5] *Id.*
[6] *Id.*

As set forth below, Plaintiffs seek certification of a Nationwide Class, a New York Subclass, a California Subclass, a Massachusetts Subclass, and a Connecticut Subclass.

## JURISDICTION & VENUE

13. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

14. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District.

15. Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(b)(2) because Plaintiffs reside in this District and because Defendant maintains its principal place of business in this District.

## PARTIES

16. Plaintiff Kaileigh Rachwal is a citizen of Massachusetts who resides in Pittsfield, Massachusetts who purchased the Products during the class period, as described herein. Plaintiff Rachwal last purchased the Products from a ByHeart.com in November 2025. Prior to her purchase of the Products, Plaintiff Rachwal reviewed the Products' labeling and saw that the Products were crafted with "Certified Clean Ingredients." Plaintiff Rachwal relied on this representation to purchase the Products over other infant formulas. Plaintiff Rachwal saw this representation prior to, and at the time of purchase, and understood them as representations and warranties that the Products contained clean ingredients that were safe to feed to her infant. Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have

purchased the Products on the same terms had he known these representations were not true. In making her purchase, Plaintiff Rachwal paid a substantial price premium due to the false and misleading representations about the Products. However, Plaintiff Rachwal did not receive the benefit of her bargain because the Products contained, or were not at risk of containing, contaminants such as *Clostridium botulinum* and have been recalled by Defendant. As a result of Defendant's recall, the 6 cans and 1 bag of Products in Plaintiff Rachwal's possession at the time of the recall are worthless.

17. Plaintiff Amber Stuart is a citizen of New York who resides in Pound Ridge, New York who purchased the Products during the class period, as described herein. In 2025, Plaintiff Stuart purchased the Products for her personal use from Target stores located in Fairfield County, Connecticut. Plaintiff Stuart last purchased the Products from a Target store located in Stamford, Connecticut on November 6, 2025. Prior to her purchase of the Products, Plaintiff reviewed the Products' labeling and saw that the Products were crafted with "Certified Clean Ingredients." Plaintiff Stuart relied on this representation to purchase the Products over other infant formulas. Plaintiff Stuart saw this representation prior to, and at the time of purchase, and understood them as representations and warranties that the Products contained clean ingredients that were safe to feed to her infant. Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Products on the same terms had he known these representations were not true. In making her purchase, Plaintiff Stuart paid a substantial price premium due to the false and misleading representations about the Products. However, Plaintiff Stuart did not receive the benefit of her bargain because the Products contained, or were not at risk of containing, contaminants such as *Clostridium botulinum* and have been recalled by Defendant.

18. Plaintiff Samantha De Oliveria is a citizen of New York who resides in Wappinger's

Falls, New York who purchased the Products during the class period, as described herein. In 2025, Plaintiff De Oliveria purchased the Product for her personal use from Defendant's website. Prior to her purchase of the Product, Plaintiff reviewed Defendant's website and the Products' labeling and saw that the Products were crafted with "Certified Clean Ingredients." Plaintiff De Oliveria relied on this representation to purchase the Products over other infant formulas. Plaintiff De Oliveria saw this representation prior to, and at the time of purchase, and understood them as representations and warranties that the Products contained clean ingredients that were safe to feed to her infant. Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Products on the same terms had he known these representations were not true. In making her purchase, Plaintiff De Oliveria paid a substantial price premium due to the false and misleading representations about the Products. However, Plaintiff De Oliveria did not receive the benefit of her bargain because the Products contained, or were not at risk of containing, contaminants such as *Clostridium botulinum* and have been recalled by Defendant. As a result of Defendant's recall, the 12 cans of the Product in Plaintiff De Oliveria's possession at the time of the recall are worthless.

19. Plaintiff Kristina Torres is a citizen of California who resides in Madera, California who purchased the Products during the class period, as described herein. On or about October 10, 2025, Plaintiff Torres purchased the Products for her personal use from ByHeart.com. Prior to her purchase of the Products, Plaintiff reviewed the Products' labeling and saw that the Products were crafted with "Certified Clean Ingredients." Plaintiff Torres relied on this representation to purchase the Products over other infant formulas. Plaintiff Torres saw this representation prior to, and at the time of purchase, and understood them as representations and warranties that the Products contained clean ingredients that were safe to feed to her infant. Accordingly, these representations and

warranties were part of the basis of the bargain, in that she would not have purchased the Products on the same terms had he known these representations were not true. In making her purchase, Plaintiff Torres paid a substantial price premium due to the false and misleading representations about the Products. However, Plaintiff Torres did not receive the benefit of her bargain because the Products contained, or were not at risk of containing, contaminants such as *Clostridium botulinum* and have been recalled by Defendant. As a result of Defendant's recall, the 3 cans and 4 bags of the Product in Plaintiff Torres' possession at the time of the recall are worthless.

20. Defendant ByHeart, Inc. is a Delaware corporation and maintains its principal place of business at 131 Varick Street, 11th Floor, New York, New York, 10013. Defendant manufactures, packages, labels, advertises, markets, distributes and/or sells the Products in New York and throughout the United States. Defendant, at all times material hereto, conducted business in New York, maintained agents for the customary transaction of business in New York, and conducted substantial and not isolated business activity within this state. At all times material hereto Defendant manufactured, marketed, promoted, advertised, and/or sold the Products at issue in this Action. Defendant also manufactured and distributed the Products at issue in this Action for sale at retail stores and locations throughout New York, and the entire nation.

## FACTUAL BACKGROUND

### A. Reasonable Consumers Believe the Products Do Not Contain, Or Are Not at Risk of Containing, Contaminants Such as *C. botulinum*

21. As noted above, the front labels of the Products claim that the Products contain "Certified Clean Ingredients" and that they are "**THOUGHTFULLY CRAFTED WITH: NO** GMO **NO** SOY **NO** CORN SYRUP OR MALTODEXTRIN **NO** PALM OIL **NO** GLUTEN **NO** ARTIFICIAL GROWTH HORMONES **NO** HEXANE-EXTRACTED DHA. **NO, THANK YOU.**":







22. The front labels of the Products also represent that they have received a Purity Award from the Clean Label Project:




23. The back labels of Defendant's Whole Nutrition Infant Formula cans contain Defendant's "FARM TO FORMULA QUALITY PROMISE:"




(hereinafter, the "Representations").

24. On the "Our Story" portion of Defendant's website, Defendant touts that it upgraded its manufacturing facility to "provide the very best conditions for our brand new infant formula – becoming only the 4th fully integrated, FDA-registered infant nutrition brand in the US (and the first new one in decades!)":

# Creating Our Facility

We realized that in order to create the formula of our dreams, we needed to customize our facility to our proprietary process. So we acquired a manufacturing facility in Reading, PA, and upgraded it to provide the very best conditions for our brand new infant formula—becoming only the 4th fully integrated, FDA-registered infant nutrition brand in the US (and the first new one in decades!).

25. Defendant further promises that the Products deliver "No-Compromise Nutrition" because "'clean' alone is not enough:"[7]

---

[7] https://byheart.com/pages/our-story (last visited November 21, 2025).




26. Through its "Farm-to-Formula Accountability," Defendant claims to be "committed to hand-picked ingredients, direct sourcing, and proprietary quality retention at every step.":[8]




27. Defendant's website further promises "[r]igorous quality and safety testing. Going above and beyond what is required.":[9]

---

[8] *Id.*

[9] https://byheart.com/ (last visited November 21, 2025).




28. Moreover, as of at least October 7, 2025, Defendant's website claimed that Defendant tests "for more than 700" contaminants in the Products:[10]




29. At no time prior to the recall did the Products' packaging or Defendant's identify a potential risk of any contaminants such as *C. botulinum* (the "Omission"). *C. botulinum* is not

[10] https://web.archive.org/web/20251007024203/https://byheart.com/?view=sl-0B2B06A8 (last visited November 21, 2025).

listed anywhere on the packaging, nor is there any warning about the inclusion (or even potential inclusion) of *C. botulinum* in the Products.[11]

30. Based on the Representations and Omissions, consumers reasonably believe that Products they are purchasing are comprised of only clean ingredients, are tested for any contamination, and do not contain, and are not at risk of containing, any contaminants, such as *C. botulinum*.

31. The advertising and labeling for Defendant's Products purchased by Plaintiffs was prepared and/or approved by Defendant and its agents and was disseminated by Defendant and its agents through advertising and labeling containing the misrepresentations alleged herein.

32. Consumers relied on the label Representations and Omissions in purchasing the Products.

33. Consumers lack the meaningful ability to test or independently ascertain or verify a product's label representations, especially at the point of sale, and discovering that the Products are at risk of containing contaminants such as *C. botulinum*.

34. Defendant's deceptive Representations and Omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

35. Plaintiffs and the Class members reasonably relied on Defendant's false and misleading Representations and Omissions to their detriment.

---

[11] Notably, on August 30, 2023, Defendant was warned by the FDA for "significant violations" of the Infant Formula Requirements Pertaining to Current Good Manufacturing Practice, Quality Control Procedures, Quality Factors, Records and Reports, and Notifications (the "Infant Formula Rule") stemming from a batch of formula that had tested positive for *Cronobacter spp.* and was later confirmed as *Cronobacter sakazakii*. *See* https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/byheart-inc-653854-08302023 (last visited November 21, 2025).

36. Defendant's false, misleading, and/or deceptive Representations and Omissions are likely to deceive and mislead reasonable consumers and the general public.

37. In making the false, misleading and deceptive Representations and Omissions described herein, Defendant knew and intended that consumers would pay more for the Products.

38. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive Representations and omissions, Defendant injured Plaintiffs and the Class members in that they:

a. Paid a sum of money for a Product that was not what Defendant represented;

b. Paid a premium price for a Product that was not what Defendant represented;

c. Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted;

d. Were deprived of the benefit of the bargain because the Products they purchased are worthless because they have been recalled; and

e. Were deprived of a refund for the Products they purchased.

39. Had Defendant not made the false, misleading, and/or deceptive Representations and Omissions, Plaintiffs and the Class members would not have been willing to pay the same amount for the Products they purchased.

40. Based on Defendant's false, misleading, and/or deceptive Representations and Omissions, Defendant was able to, and did, charge a premium price for the Products over the cost of competitive products.

41. Plaintiffs and members of the Classes have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

**B. <u>Defendant's Recall is Inadequate</u>**

42. On November 8, 2025 – in connection with the initial limited two-batch recall –

Defendant promised to replace any recalled Products from the two batches at no cost:[12]

> **If you've purchased ByHeart formula from the identified batch codes below, please discontinue use and dispose of the product immediately**—we'll replace those cans at no cost. No other batches have been impacted by this investigation. Our Parent Experience team is here to support you with anything you need—please call 866-201-9069, and we will assist you right away.

43. On November 9, 2025, Defendant reiterated its commitment to replacing the Products from the recalled batches "at no cost:"[13]

> **WHAT ARE WE DOING**
>
> Because we are treating the CDPH's results with the utmost seriousness, we are conducting testing, with a third party independent testing laboratory, of the two recalled batches of our formula using food safety testing best practices, to provide you results that we all can feel confident in.
>
> From the very beginning, we have acted quickly and decisively to remove any potential risk—immediately voluntarily recalling the relevant batches of our formula that the FDA told us were consumed by infants in their investigation. We want to remind you to dispose of any cans with the recalled batch codes and to reach out to our Parent Experience team for support. They can help you replace your formula at no cost.

44. On November 11, 2025, Defendant announced it was voluntarily recalling all Products nationwide regardless of batch.[14]

45. On November 13, 2025, Defendant announced a new refund policy for the Products. Customers who purchased the Products online from Defendant on or after October 1, 2025, are entitled to receive a refund for two units. First-time customers are eligible for a full refund on their first order. Defendant is offering no refunds to those consumers who purchased through a third-party:[15]

---

[12] https://byheart.com/pages/nov-8-an-update-from-our-founders-on-our-voluntary-recall-november-2025 (last visited November 21, 2025).
[13] https://byheart.com/pages/nov-9-an-update-from-our-founders-on-our-voluntary-recall-november-2025 (last visited November 21, 2025).
[14] https://byheart.com/pages/nov-11-an-update-from-our-founders-on-our-voluntary-recall-november-2025 (last visited November 21, 2025).
[15] https://byheart.com/pages/nov-13-2025-an-update-from-our-founders (last visited November 21, 2025).

**Refunds**
Orders placed on ByHeart.com on or after October 1, 2025 will be eligible for a refund.

Customers who ordered during this window will receive a refund for up to two units, including cans or Anywhere Packs. First-time customers will receive a full refund on their first order, staying true to our ByHeart Promise.

If you purchased ByHeart through a retail partner or on Amazon, please contact the retailer directly for their refund process.

## CLASS ACTION ALLEGATIONS

46. Plaintiffs bring this action on behalf of themselves and all other similarly situated persons pursuant to Fed R. Civ. P. 23(a), (b)(1), and (b)(3). Specifically, the Classes are defined as:

> All persons, who, within the four years preceding the filing of the original Complaint ("Class Period"), purchased one of more of the Products in the United States for personal, family or household purposes, and not for resale (the "Class");
>
> All persons, who, within the four years preceding the filing of the original Complaint ("Class Period"), purchased one of more of the Products within the State of New York for personal, family or household purposes, and not for resale (the "New York Subclass");
>
> All persons, who, within the four years preceding the filing of the original Complaint ("Class Period"), purchased one of more of the Products within the State of California for personal, family or household purposes, and not for resale (the "California Subclass");
>
> All persons, who, within the four years preceding the filing of the original Complaint ("Class Period"), purchased one of more of the Products within the State of Massachusetts for personal, family or household purposes, and not for resale (the "Massachusetts Subclass"); and
>
> All persons, who, within the four years preceding the filing of the original Complaint ("Class Period"), purchased one of more of the Products within the State of Connecticut for personal, family or household purposes, and not for resale (the "Connecticut Subclass").

47. Excluded from the Classes are: (a) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (b) any entity in which Defendants have a controlling

interest, to include, but not limited to, their legal representative, heirs, and successors; (c) all persons who are presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (d) any judicial officer in the lawsuit and/or persons within the third degree of consanguinity to such judge.

48. Plaintiffs reserve the right to amend or otherwise alter the above class definition presented to the Court at the appropriate time, or to add or eliminate classes and subclasses as appropriate, in response to facts learned through investigation, discovery, and the specific theories of liability, or otherwise.

49. This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

50. **Numerosity:** The precise number of members of the Classes is unknown to Plaintiffs, but it is clear the number greatly exceeds the number that would make joinder practicable, particularly given Defendant's comprehensive distribution and sales network throughout the entire United States. However, members of the Classes and their identities may be determined through discovery.

51. **Commonality and Predominance:** This Action involves common questions of law or fact, which predominate over any questions affecting individual members of the Classes. All members of the Classes were exposed to the deceptive practices of Defendant, as alleged herein. Included within the common questions of law or fact are:

a. Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

c. Whether Defendant made false and/or misleading statements to the Classes

and the public concerning the servings in its Products;

d. Whether Defendant's false and misleading statements concerning its Products was likely to deceive the public;

e. Whether Defendant violated New York General Business Law §§ 349 and 350;

f. Whether Defendant violated the Connecticut Unfair Trade Practices Act;

g. Whether Defendant committed a breach of express warranty;

h. Whether Plaintiffs and members of the Classes are entitled to equitable and/or injunctive relief;

i. Whether Plaintiffs and members of the Classes have sustained damage as a result of Defendant's unlawful conduct;

j. The proper measure of damages sustained by Plaintiffs and members of the Classes; and

k. Whether Defendant was unjustly enriched by its deceptive practices.

52. **Typicality:** Plaintiffs' claims are typical of the claims of the members of the Classes they seek to represent because Plaintiffs, like all Class members, purchased Defendant's recalled Products. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiffs and members of the Classes sustained similar injuries arising out of Defendant's conduct. Plaintiffs' and members of the Classes claims arise from the same practices and course of conduct and are based on the same legal theories. Further, there are no defenses available to Defendant that are unique to Plaintiffs' claims.

53. **Adequacy:** Plaintiffs are adequate representatives of the members of the Classes they seek to represent because their interests do not conflict with the interests of the members of the Class Plaintiffs seek to represent. Plaintiffs have retained counsel competent and experienced in the prosecution of complex class action litigation, including complex questions that arise in consumer

protection litigation. Plaintiffs and their counsel will prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiffs and Plaintiffs' counsel. Undersigned counsel has represented consumers in a wide variety of actions where they have sought to protect consumers from fraudulent and deceptive practices.

54. **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Classes to individually seek redress for Defendant's wrongful conduct. Even if the members of the Classes could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments; and increases the delay and expense to all parties and the court system and thereby unnecessarily clogging of dockets.

55. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Given the similar nature of the members of the Classes' claims and the absence of material or dispositive differences in laws upon which the claims are based, the Classes will be easily managed by the Court and the parties.

56. **Declaratory and Injunctive Relief:** Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief. Here Defendant has engaged in conduct that has misled consumers to believe that the Products did not contain, or were not at risk of containing, contaminants such as *Clostridium botulinum*. Since Defendant's conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently,

injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendant's continuing misconduct.

57. The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy as above stated.

## CAUSES OF ACTION

### COUNT I
### Violation of New York G.B.L. § 349 *et seq*.
### (On Behalf of Plaintiff De Oliveria and the New York Subclass)

58. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

59. Plaintiff De Oliveria brings this claim individually and on behalf of the New York Subclass against Defendant.

60. This claim is brought pursuant to the laws of the State of New York.

61. Plaintiff De Oliveria and New York Subclass members are "persons" within the meaning of the GBL § 349(h).

62. Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of GBL § 349(b).

63. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

64. Defendant made Representations and Omissions that mislead consumers to believe that the Products did not contain, or were not at risk of containing, contaminants such as *Clostridium botulinum*.

65. In doing so, Defendants engaged in deceptive acts or practices in violation of GBL § 349.

66. Information that the Products contain, or had the risk of containing, contaminants such as *Clostridium botulinum* was in Defendant's exclusive control. Plaintiff De Oliveria could not possibly have known that the Products at issue were not being sold as advertised, as such information was not available to, nor readily ascertainable by, the public.

67. Defendant's deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations. Defendant knew consumers would purchase the Products and/or pay more for them under the false – but reasonable – belief that the Products did not contain, or were not at risk of containing, contaminants such as *Clostridium botulinum*.

68. Defendant's deceptive acts and practices were directed at consumers.

69. Defendant's misleading conduct concerns widely purchased consumer products and affects the public interest. Defendant's conduct includes unfair and misleading acts and practices that have the capacity to deceive consumers and are harmful to the public at large. Defendant's conduct is misleading in a material way because it causes consumers to believe that the Products did not contain, or were not at risk of containing, contaminants such as *Clostridium botulinum*.

70. Plaintiff De Oliveria and members of the New York Subclass suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations in that: (i) they would not have purchased the Products had they known the truth; and (ii) they overpaid for the Products on account of the misrepresentations, as described herein. As a result, Plaintiff De Oliveria and members of the New York Subclass have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted (not containing, or not at risk of containing, contaminants such as *Clostridium botulinum*) and the Products as actually sold

(containing, or at risk of containing, contaminants such as *Clostridium botulinum*).

71. On behalf of herself and other members of the Class, Plaintiff De Oliveria seeks to enjoin Defendant's unlawful acts and practices described herein, to recover actual damages or $50, whichever is greater, reasonable attorney's fees and costs, and any other just and proper relief available under GBL § 349.

**COUNT II**
**Violation of New York G.B.L. § 350**
**(On Behalf of Plaintiff De Oliveria and the New York Subclass)**

72. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

73. Plaintiff De Oliveria brings this claim individually and on behalf of the New York Subclass against Defendant.

74. GBL § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

75. New York General Business Law Section 350-a(1) defines false advertising as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representation made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual."

76. Defendant's labeling and advertisement of the Products was false and misleading in a material way. Specifically, Defendant's Representations and Omissions cause consumers to

believe that the Products did not contain, or were not at risk of containing, contaminants such as *Clostridium botulinum*.

77. Plaintiff De Oliveria understood Defendant's misrepresentations to mean that the Products did not contain, or were not at risk of containing, contaminants, such as *Clostridium botulinum*.

78. Defendant's Representations and Omissions are consumer-oriented and were and are likely to mislead reasonable consumers acting reasonably under the circumstances.

79. Defendant's Representations and Omissions have resulted in consumer injury or harm to the public interest.

80. As a result of the Representations and Omissions, Plaintiff De Oliveria and members of the New York Subclass have suffered economic injury because: (i) they would not have purchased the Products had they known the truth; and (ii) they overpaid for the Products on account of the misrepresentations, as described herein. As a result, Plaintiff De Oliveria and members of the New York Subclass have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted (not containing, or not at risk of containing, contaminants such as *Clostridium botulinum*) and the Products as actually sold (containing, or at risk of containing, contaminants such as *Clostridium botulinum*).

81. By reason of the foregoing and as a result of Defendant's conduct, Plaintiff De Oliveria and members of the New York Subclass seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 350.

**COUNT III**
**Violation of the Conn. Gen. Stat. § 42-110b(a)**
**(On Behalf of Plaintiff Stuart and the Connecticut Subclass)**

82. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

83. Plaintiff Stuart brings this claim individually and on behalf of the Connecticut Subclass against Defendant.

84. The Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110b(a), declares that "no person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

85. Defendant is a "person" within the meaning of Conn. Gen. Stat. § 42-110a(1) that engaged in "trade" and/or "commerce" as defined by Conn. Gen. Stat. § 42-110a(4) within the state of Connecticut.

86. Conn. Gen. Stat. § 42-110g(b) authorizes any person suffering ascertainable loss of money or property, real or personal, as a result of a CUPTA violation to bring a class action.

87. Plaintiff Stuart is a "person" within the meaning of Conn. Gen. Stat. § 42-110a(1).

88. Defendant's deceptive and/or unfair conduct in the conduct of trade and/or commerce within Connecticut in the form of making the Representations and Omissions that cause consumers to believe that the Products did not contain, or were not at risk of containing, contaminants such as *Clostridium botulinum*.

89. Defendant's deceptive and/or unfair conduct has caused the Plaintiff Stuart and members of the Connecticut Subclass to be damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted (not containing, or not at risk of containing, contaminants such as *Clostridium botulinum*) and the Products as actually

sold (containing, or at risk of containing, contaminants such as *Clostridium botulinum*).

90. Because Defendant knew or should have known that its conduct was deceptive and/or unfair under Conn. Gen. Stat. § 42-110b(a), its conduct was willful and/or was undertaken with reckless disregard for the harm it would cause Plaintiff Stuart and members of the Connecticut Subclass.

91. Defendant's deceptive and unfair acts described above directly and proximately caused Plaintiff Stuart and members of the Connecticut Subclass to suffer actual damages, attorneys' fees, and costs.

92. Accordingly, Plaintiff Stuart, individually and on behalf of members of the Connecticut Subclass, seeks (a) a declaration that Defendant's conduct described above violates the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq*.; (b) an award of actual damages; (c) an award of attorneys' fees and costs pursuant to Conn. Gen. Stat. § 42-110g(d); and, (d) any further relief the Court deems just and proper.

## COUNT IV
## Violations of California's Unfair Competition Law ("UCL")
## (On Behalf of Plaintiff Torres and the California Subclass)

93. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

94. Plaintiff Torres brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

95. Defendant's conduct constitutes an unfair business act and practice pursuant to California Business & Professions Code §§ 17200, *et seq*. (the "UCL"). The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

96. Plaintiff Torres brings this claim seeking restitution or disgorgement of the amounts Defendant acquired through the unfair, unlawful, and fraudulent business practices, as described

herein; and injunctive relief to stop Defendant's misconduct, as described herein.

97. Defendant's knowing conduct, as alleged herein, constitutes a "fraudulent" and/or "unfair" business practice, as set forth in California Business & Professions Code §§ 17200-17208.

***Defendant's Conduct Constitutes a Fraudulent Business Practice***

98. Defendant's conduct constitutes a fraudulent business practice because, as set forth herein, consumers are likely to be deceived by Defendant's Representations and Omissions that the Products did not contain, or were not at risk of containing, contaminants such as *Clostridium botulinum*.

99. Defendant was and is aware that its Representations and Omissions are material to consumers.

100. Defendant was and is aware that its Representations and Omissions are misleading, as described herein.

101. Defendant had an improper motive – to derive financial gain at the expense of accuracy or truthfulness – in its practices related to the labeling and advertising of the Products.

102. There were reasonable alternatives available to Defendant to further Defendant's legitimate business interests, other than the conduct described herein.

***Defendant's Conduct Constitutes an Unfair Business Practice***

103. Defendant's conduct violates both the "Immoral Test" and the "Balancing Test" under California law, which are used to analyze whether conduct is "unfair".

104. Defendant's conduct violates the Immoral Test because Defendant intentionally makes the Representations and Omissions to increase sales of the Products.

105. Defendant was and is aware that its Representations and Omissions are misleading, as described herein.

106. Defendant's conduct is substantially injurious because consumers purchase the misrepresented Products in reliance on Defendant's Representations and Omissions.

107. Defendant's conduct also violates the "Balancing Test" because the utility of Defendant's conduct in labeling the Products with the Representations and Omissions is

outweighed by the harm to consumers.

108. As set forth herein, the Representations are optional, voluntary advertising statements.

109. Defendant makes the Representations and Omissions to increase sales of the Products and to the detriment of consumers, who are misled and deceived.

110. Consumers are directly harmed by Defendant's conduct in that they would not have purchased the Products if they had known the truth.

111. Defendant's conduct is also substantially injurious because it prevents consumers from making informed purchasing decisions.

112. In addition, Defendant's conduct is injurious to competition because Defendant's misrepresentation of its Products prevents consumers from making an informed choice between its Products and other similar products, which do not contain, or are not at risk of containing, contaminants such as *Clostridium botulinum*.

113. Defendant had an improper motive – to derive financial gain at the expense of accuracy or truthfulness – in its practices related to the labeling and advertising of the Products.

114. There were reasonable alternatives available to Defendant to further Defendant's legitimate business interests, other than the conduct described herein.

115. Plaintiff Torres and members of the Class could not have reasonably avoided injury. Defendant's Representations and Omissions regarding the Products were likely to deceive, and Defendant knew or should have known that its Representations and Omissions were misleading.

116. Plaintiff Torres purchased the Products with the reasonable belief that the Products did not contain, or were not at risk of containing, contaminants such as *Clostridium botulinum*, and without knowledge that the Products did contain, or were at risk of containing, contaminants such as *Clostridium botulinum*.

***Defendant's Conduct Constitutes an Unlawful Business Act***

117. Defendant's misrepresentation of material facts, as set forth herein, also constitutes an "unlawful" practice because they violate California Civil Code §§ 1572, 1573, 1709, 1710,

1711, and 1770 and the laws and regulations cited herein, as well as the common law.[16]

118. Defendant's conduct in making the Representations and Omissions described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors.

119. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair business practice under California Business & Professions Code §§ 17200-17208.

120. Plaintiff Torres and members of the California Subclass could not have reasonably avoided injury. Defendant's uniform, material Representations and Omissions regarding the Products were likely to deceive, and Defendant knew or should have known that its Representations and Omissions was untrue and misleading.

121. Plaintiff Torres and members of the Class have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the monies paid to Defendant for the Products, interest lost, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff Torres and members of the California Subclass.

122. As a result of the business acts and practices described above, Plaintiff Torres and members of the California Subclass are entitled to such Orders and judgments that may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendant.

---

[16] The California Civil Code Sections prohibit the following conduct: (i) § 1572: actual fraud, including by suggestion of an untrue fact or suppression of that which is true; (ii) § 1573: constructive fraud, including by breach of duty "by misleading another to his prejudice" and in any act or omission that the law declares to be fraudulent; (iii) §§ 1709-1711: willfully deceiving another or a particular class of persons "with intent to induce him to alter his position to his injury or risk", including by suggestion of a fact that is not true or suppression of a fact by one who is bound to disclose it, or by giving information "of other facts which are likely to mislead for want of communication of that fact"; (iv) § 1770: listing proscribed practices, including unfair methods of competition and unfair or deceptive acts and practices, as described herein.

123. Pursuant to Civil Code § 3287(a), Plaintiff Torres and the California Subclass are further entitled to pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff Torres and the California Subclass are entitled to interest in an amount according to proof.

124. With respect to restitution under the UCL claim, Plaintiff Torres alleges in the alternative that Plaintiff Torres and members of the California Subclass lack an adequate remedy at law for the reasons already alleged above.

**COUNT V**
**Violation of California's False Advertising Law ("FAL")**
**(On Behalf of Plaintiff Torres and the California Subclass)**

125. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

126. Plaintiff Torres brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

127. California Business & Professions Code § 17500 prohibits "unfair, deceptive, untrue or misleading advertising . . .."

128. Defendant violated § 17500 when it represented, through its false and misleading Representations and Omissions, that the Products possess characteristics and value that they do not have, namely that the Products did not contain, or were not at risk of containing, contaminants such as *Clostridium botulinum*.

129. Defendant's deceptive practices were designed to induce reasonable consumers like Plaintiff Torres to purchase the Products.

130. Defendant's uniform, material Representations and Omissions regarding the Products were likely to deceive, and Defendant knew or should have known that its uniform Representations and Omissions were untrue and/or misleading.

131. Plaintiff purchased the Products in reliance on the Representations and Omissions made by Defendant, including that the Products did not contain, or were not at risk of containing,

contaminants such as *Clostridium botulinum*.

132. Plaintiff Torres and members of the California Subclass have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the price paid to Defendant for the Products, interest lost, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff Torres and members of the California Subclass.

133. The above acts of Defendant were and are likely to deceive reasonable consumers in violation of § 17500.

134. In making the representations alleged herein, Defendant knew or should have known that the Representations and Omissions were deceptive and/or misleading, and acted in violation of § 17500.

135. As a direct and proximate result of Defendant's unlawful conduct in violation of § 17500, Plaintiff Torres and members of the California Subclass request an Order requiring Defendant to disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendant by means of such acts of false advertising, as well as interests and attorneys' fees.

136. With respect to restitution under the FAL claim, Plaintiff Torres alleges in the alternative that Plaintiff Torres and members of the California Subclass lack an adequate remedy at law for the reasons already alleged above.

**COUNT VI**
**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**(On Behalf of Plaintiff Torres and the California Subclass)**

137. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

138. Plaintiff Torres brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

139. Plaintiff Torres brings this action pursuant to California's CLRA, Cal. Civ. Code § 1750, *et seq*.

140. The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

141. The Products are "goods," as defined by the CLRA in California Civil Code §1761(a).

142. Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c).

143. Plaintiff Torres and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d).

144. Purchase of the Products by Plaintiff Torres and members of the California Subclass are "transactions," as defined by the CLRA in California Civil Code §1761(e).

145. Defendant violated Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have" by making the Representations and Omissions, as described herein.

146. Defendant also violated section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . if they are of another" by making the Representations and Omissions, as described herein.

147. In addition, Defendant violated section 1770(a)(9) by advertising the Products "with intent not to sell them as advertised" in that the Products are misrepresented and misbranded as described herein.

148. Defendant's uniform Representations and Omissions regarding the Products were likely to deceive, and Defendant knew or should have known that its representations were deceptive and/or misleading.

149. Plaintiff Torres and members of the California Subclass relied on Defendant's unlawful conduct and could not have reasonably avoided injury.

150. Plaintiff Torres and members of the Class were unaware of the existence of facts that Defendant suppressed and failed to disclose, namely that the Products did contain, or were at

risk of containing, contaminants such as *Clostridium botulinum*.

151. Defendant's Representations and Omissions were material because a reasonable consumer would consider the fact that Products contained, or were at risk of containing, contaminants such as *Clostridium botulinum* to be important when choosing which infant formula to purchase.

152. Plaintiff Torres and members of the California Subclass would not have purchased the Products had they known the truth about the Products.

153. Plaintiff Torres and members of the California Subclass have been directly and proximately injured by Defendant's conduct.

154. Such injury includes, but is not limited to, the purchase price of the Products and/or the price of the Products at which they were offered.

155. Moreover, Defendant's conduct is malicious, fraudulent, and/or wanton in that Defendant intentionally misled and withheld material information from consumers, including to increase the sale of the Products.

156. Pursuant to California Civil Code § 1782(a), on December 2, 2025, Plaintiff Torres on her own behalf, and on behalf of members of the Class, provided notice to Defendant of the alleged violations of the Consumer Legal Remedies Act by notice letter setting forth Plaintiffs' claims.

157. As a direct and proximate result of Defendant's unlawful conduct in violation of the CLRA, Plaintiff Torres and members of the California Subclass request an Order pursuant to § 1780 enjoining such future wrongful conduct on the part of Defendant.

158. Wherefore, Plaintiff seeks injunctive relief for Defendant's violations of the CLRA.

159. With respect to restitution under the CLRA claim, Plaintiff Torres alleges in the alternative that Plaintiff Torres and Class Members lack an adequate remedy at law for the reasons already alleged above.

**COUNT VII**
**Violation of the Massachusetts Unfair and Deceptive Business Practices Act**
**(On Behalf of Plaintiff Rachwal and the Massachusetts Subclass)**

160. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

161. Plaintiff Rachwal brings this Count individually and on behalf of the other members of the Massachusetts Subclass.

162. The Massachusetts Regulation of Business Practices for Consumer Protection Act ("Massachusetts Consumer Protection Act") prohibits "[u]nfair methods of competition and unfair or deceptive practices in the conduct of any trade or commerce. . . ." Mass Gen. Laws ch. 93A, § 2.

163. By the conduct described in detail above and incorporated herein, Defendant engaged in unfair or deceptive acts in violation of Mass Gen. Laws ch. 93A, § 2.

164. Defendant's Representations and Omissions that caused consumers to believe that the Products did not contain, or were not at risk of containing, contaminants such as *Clostridium botulinum*, described above, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Products.

165. Defendant intended for Plaintiff Rachwal and the other members of the Massachusetts Subclass to rely on Defendant's Representations and Omissions that caused consumers to believe that the Products did not contain, or were not at risk of containing, contaminants such as *Clostridium botulinum*.

166. Plaintiff Rachwal and the other members of the Massachusetts Subclass justifiably acted or relied to their detriment upon Defendant's Representations and Omissions, as evidenced by Plaintiff Rachwal's and the other members of the Massachusetts Subclass purchases of the Products.

167. Had Defendant disclosed all material information regarding that the Products

contained, or were at risk of containing, contaminants such as *Clostridium botulinum* to Plaintiff Rachwal and the other members of the Massachusetts Subclass, Plaintiff Rachwal and other members of the Massachusetts Subclass would not have purchased the Products or would have paid less to do so.

168. Defendant's Representations and Omissions have deceived Plaintiff Rachwal, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Massachusetts Subclass.

169. As a direct and proximate result of Defendant's deceptive trade practices, Plaintiff Rachwal and the other members of the Massachusetts Subclass have suffered ascertainable loss and actual damages. Plaintiff Rachwal and the other members of the Massachusetts Subclass who purchased Products would not have purchased Products, or, alternatively, would have paid less for them had the truth that the Products contained, or were at risk of containing, contaminants such as *Clostridium botulinum* had been disclosed. Plaintiff Rachwal and the other members of the Massachusetts Subclass are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under the Massachusetts Consumer Protection Act.

**COUNT VIII**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Class)**

170. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

171. Defendant, through its misleading Representations and Omissions, enticed Plaintiff and members of the Class to purchase the Products.

172. Plaintiffs and Class members conferred a benefit on Defendant by purchasing the Products.

173. By its wrongful acts, Defendant has been unjustly enriched at the expense of, and to

the detriment of, Plaintiffs and Class members.

174. Defendant benefitted financially from the revenues and other compensation tied to the sale of the Products, which was unjust in light of Defendant's wrongful conduct.

175. Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiffs and the Class as the result of its deceptive marketing and advertising practices.

176. Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiffs and the Class members is unjust and inequitable, Plaintiffs seek restitution from, and an order from the Court disgorging all profits, benefits and other compensation obtained by Defendant due to its wrongful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that the Court grant Plaintiffs and all members of the proposed class the following relief against Defendant:

(a) For an order certifying the Classes and naming Plaintiffs' attorneys as Class Counsel to represent the members of the Classes;

(b) For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(d) For prejudgment interest on all amounts awarded;

(e) For an order of restitution and all other forms of equitable monetary relief;

(f) For an order requiring Defendant to undertake a corrective advertising campaign;

(g) For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit; and

(h) Granting such other and further relief as many be just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: December 2, 2025

Respectfully submitted,

KAMBERLAW, LLC

By: *./s/ Frederick J. Klorczyk III*

Frederick J. Klorczyk III
305 Broadway, Suite 713
New York, NY 10007
Tel: 646.964.9604
Fax: 212.202.6364
Email: fklorczyk@kamberlaw.com